**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

ERWIN DARNELL COLEMAN			CIVIL ACTION NO. 15-2365

VERSUS					JUDGE S. MAURICE HICKS, JR.

C.O. LEE, ET AL.				MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 79) filed by Defendants, Sherlon Cone ("Cone") and Harrison Shaver ("Shaver") (collectively "Defendants"). Plaintiff, Erwin Darnell Coleman ("Coleman") opposes the Motion. See Record Document 81. Defendants seek dismissal of all Coleman's claims. For the reasons stated in the instant Memorandum Ruling, Defendants' Motion for Summary Judgment is hereby **DENIED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

On the morning of January 27, 2015, Shreveport Police Department officers ("SPD officers") arrived at Coleman's residence after being advised by Coleman's neighbor that he was involved in criminal activity. Also present at Coleman's residence when the SPD officers arrived were Defendants. Defendants' presence at the residence during the events at issue is undisputed. At all times relevant to these proceedings Coleman was on parole supervision, and Defendants were employed as probation and parole Officers by the Louisiana Department of Corrections.

It is undisputed that SPD officers knocked on Coleman's door, and that when Coleman exited his residence, he was handcuffed and arrested by SPD officers. The

exact details surrounding Coleman's arrest are disputed; however, it is undisputed that Cone and Shaver made no physical contact with Coleman on January 27, 2015.

Coleman alleges that SPD officers engaged in excessive force when they arrested him. Cone and Shaver are not alleged to have used excessive force at all against Coleman. Specifically, he alleges that upon exiting the front of his residence, after being prompted to do so by the SPD officers, those officers immediately grabbed him and placed handcuffs on him. He alleges that after he was handcuffed, one of the SPD officers slammed him onto the concrete ground face-first, causing him to lose three teeth and causing injuries to his abdomen and groin areas. He further alleges that he was then kicked in the head and lower body repeatedly. See Record Document 81-2 at 2 & 3. According to Coleman and his mother, Ruthie Coleman, these events lasted for over a minute. See Record Document 81-2 at 3 & Record Document 81-5 at 14. SPD Officer Lee testified, however, that he effected a takedown of Coleman, and that only after taking Coleman to the ground, did he place handcuffs on him. See Record Document 81-4 at 121-122.

While there is a dispute in this case as to whether the SPD officers even used excessive force or not in their arrest of Coleman, the claim of Plaintiff against Cone and Shaver is a failure to intervene issue. Despite their observations, Coleman alleges, Defendants failed to "intervene or stop the use of force," despite having enough time to do so. See Record Document 81-2 at 3. Because the acts of the SPD officers during Coleman's arrest are not at issue in this Motion for Summary Judgment, these acts, whatever they may have been, shall hereafter be referred to as the "Acts." What is at

issue in this Motion is whether Defendants observed, or were even in a position to observe, the Acts. The facts regarding this issue are disputed.

Coleman alleges that Defendants were in the immediate vicinity of the Acts as they unfolded. See Record Document 81-2 at 2 & 3. Specifically, he alleges that he could "see two female officers toward one end of the front porch on the grass within 10 feet of his location. One he recognized as Cone. Shaver was next to Plaintiff while he was being handcuffed. Shaver was within five feet of Coleman at that time." Record document 81-2 at 3.

It is undisputed that Shaver was in the immediate vicinity of the Acts. See Record Document 79-6 at 15. However, Shaver denies seeing anything after the beginning of Coleman's takedown, because he was "looking in the other direction." Record Document 79-6 at 11. He alleges that after seeing the beginning of the SPD officers' takedown of Coleman he turned to watch "what was going on in the residence to make sure that there was no one else in there who may be a problem . . . ." Id. at 11 & 19. Shaver testified in his deposition that he looked in the other direction for "around a minute," and that when he turned back around Coleman was already handcuffed. Id. at 19. However, when Coleman's mother, Ruthie Coleman, was asked about the behavior of those present at the scene as the Acts occurred, she stated, "[t]hey were just looking, you know." Record Document 81-5 at 13.

Cone specifically contradicts Coleman's allegations as to her location during the Acts. She testified in her deposition that upon arriving at Coleman's residence, she immediately "went to the back of the residence" because she "figured he'd run out the back." Record Document 79-7 at 6. She alleges that she remained at the back "until [the

other officers] said [Coleman] was in custody." Id. at 7-8. In support of this testimony, SPD officer Skinner testified that at the time Coleman was taken down to the ground by SPD officer Lee, the two female officers were "[o]n the back of the house." Record Document 82-2 at 4. Additionally, the other female officer present, SPD Officer Haley, testified in her deposition that she was at the back of the residence with Cone, and that Cone was not in a position to witness Coleman's takedown. See Record Document 79-8 at 4 & 9. Shaver also testified that Cone was at the rear of the residence; however, he further testified that he did not recall the point in time at which Cone came back around to the front. See Record Document 79-6 at 18. Finally, SPD Officer Lee stated in his deposition that Cone was at the rear of the residence during the time that SPD officers were knocking on the front door of Coleman's residence; however, he also stated that he was not sure whether she was present at the time he placed the handcuffs on Coleman, as he did not see her until Coleman had already been handcuffed and placed in a chair. See Record Document 79-9 at 4-5.

## LAW AND ANALYSIS

**I.    Summary Judgment Standard**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine [dispute] of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 728. During this stage, courts must look to the substantive law underlying the lawsuit

in order to identify "which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)

"Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). A nonmovant cannot meet the burden of proving that a genuine dispute of material fact exists by providing only "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).

In reviewing a motion for summary judgment, the court is to view "the facts and inferences to be drawn therefrom in the light most favorable to the non-moving party." Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp., Inc., 292 F.3d 471, 478 (5th Cir. 2002); see also Harris v. Serpas, 745 F.3d 767, 771 (5th Cir. 2014). The court should not, however, in the absence of any proof, presume that the nonmoving party could or would prove the necessary facts. See Little, 37 F.3d at 1075.

**II.    Section 1983**

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." Harrington v. Harris, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. § 1983). Section 1983, however, does not create any substantive rights; it simply provides a remedy for the rights designated therein. See id. at 365. "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." Id. (citation omitted). "To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." Leffall v. Dallas Independent School District, 28 F.3d 521, 525 (5th Cir. 1994). Therefore, the first prong requires an inquiry as to whether plaintiff has alleged a violation of a constitutional right at all. See id. at 525; Piotrowski v. City of Houston, 51 F.3d 512, 515 (5th Cir. 1995).

Coleman alleges that Defendants observed and failed to intervene in the use of excessive force by SPD officers in subduing and arresting him. Claims that law enforcement officers used excessive force are analyzed under the Fourth Amendment. See Mace v. City of Palestine, 333 F.3d 621, 624 (5th Cir. 2003) (citing Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871 (1989)). Furthermore, the Fifth Circuit has made it clear that "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under §1983." Whitley v. Hanna, 726 F.3d 631, 646 (5th Cir. 2013) (citing Hale v. Townley, 45 F.3d 914 (5th Cir. 1995). Therefore, because this Circuit recognizes

a cause of action for bystander liability in excessive force cases, Coleman meets the first prong, as he has alleged a violation of his 4th Amendment rights.

The second prong requires the alleged deprivation to be committed by a person acting under the color of state law. See Leffall, 28 F.3d at 525. Defendants were employed as Probation and Parole Officers by the Louisiana Department of Corrections. Additionally, it is undisputed that at all times relevant to this proceeding Defendants were acting in their official capacities. Record Document 79-2 at 1. As a result, Defendants were acting under the color of state law. Therefore, Coleman has met the second prong to state a claim under Section 1983. Accordingly, Coleman has sufficiently stated a claim pursuant to Section 1983.

### III. Qualified Immunity

When, as here, plaintiff seeks money damages from government officials in their individual capacities under Section 1983, the affirmative defense of qualified immunity is available to protect defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). The qualified immunity doctrine balances two often conflicting interests — "the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. at 231, 129 S. Ct. 815. As such, "[t]he protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. (citations

omitted). In effect, qualified immunity "gives ample room for mistaken judgments by protecting "all but the plainly incompetent or those who knowingly violate the law." Mendenhall v. Riser, 213 F.3d 226, 230 (5th Cir.2000) (citing Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct.1092, 1096 (1986) (internal quotation marks omitted).

Qualified immunity is technically characterized as an affirmative defense. However, once raised by defendants, it devolves upon plaintiff to negate the defense by showing that the officials' conduct violated clearly established law. See Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir.2008) (citation omitted). Plaintiff's burden is two-pronged. See Club Retro LLC v. Hilton, 568 F.3d 181, 194 (5th Cir. 2009) (quoted sources omitted). First, plaintiff must demonstrate that defendant(s) violated a constitutional right under current law. See id. at 194. "Second, [plaintiff] must claim that the defendant's actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." Id. (quoted source and internal quotation marks omitted). It is noteworthy that no motion for summary judgment has been filed on the issue of excessive force or qualified immunity by the SPD officers.

**V. Section 1983 Failure to Intervene Claims Against Defendants**

Coleman has asserted only excessive force bystander claims against Defendants under §1983. Defendants have invoked the affirmative defense of qualified immunity in their Motion for Summary Judgment. The Court will now determine whether Coleman's claims survive Defendants' Motion for Summary Judgment.

Defendants argue that they are entitled to qualified immunity for Coleman's bystander claims. As mentioned above, the first prong of qualified immunity requires a demonstration that Defendants violated Coleman's constitutional rights. Defendants

argue that there is no genuine dispute as to a material fact regarding this question. The Court disagrees.

As stated above, the Fifth Circuit, along with other federal circuit courts, has made it clear that "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under §1983." Whitley v. Hanna, 726 F.3d 631, 646 (5th Cir. 2013) (citing Hale v. Townley, 45 F.3d 914 (5th Cir. 1995). According to the Fifth Circuit's holdings in Whitley and Hale, "an officer may be liable under §1983 under a theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" Id. The Fifth Circuit further observed that "the fact that the police officers 'were from different law enforcement agencies does not as a matter of law relieve [an officer] from liability for failure to intervene.'" Id. Important considerations in deciding whether these elements are met are whether the defendant officer (1) observed the use of the alleged excessive force or (2) had sufficient time to prevent the use of excessive force. See Tufaro v. City of New Orleans, 2004 WL 1920937 at *4 n. 20, 2004 U.S. Dist. LEXIS 17146 at *12 n.20 (E.D. La. 2004) (citing Lanigan v. Vill. of E. Hazel Crest, 110 F.3d 467, 477 (7th Cir. 1997)).

Defendants argue in their Motion for Summary Judgment that there is no genuine dispute as to whether Cone or Shaver knew that SPD officers were violating Coleman's constitutional rights by engaging in excessive force. In the alternative, they argue that there is no genuine dispute as to whether there was a reasonable opportunity for Defendants to intervene. As such, Defendants argue that they are entitled to qualified immunity, as Defendants have not violated Coleman's constitutional rights. Finally,

Defendants argue that even if Coleman's constitutional rights were violated under current law, Defendants' conduct was not objectively unreasonable in light of well-established law at the time of the alleged conduct. As such, they argue that they are still entitled to qualified immunity.

### A. Defendant Cone

In the present matter, Defendants argue that there is no genuine dispute as to the fact that Cone was behind the residence, and therefore, was not in a position to know that Shreveport Police officers were engaging in excessive force. In support, Defendants cite to deposition testimony from Cone, Shaver, and multiple SPD officers. However, Coleman alleges in his sworn declaration that as the Acts occurred, he could "see two female officers toward one end of the front porch on the grass within 10 feet of his location. One he recognized as Cone." Record Document 81-2 at 3. Additionally, both Shaver and Officer Lee testified in their depositions that, although they knew Cone went to the rear of the residence upon her arrival, they were unsure of when she went back to the front of the residence. Coleman places Cone in the immediate vicinity of the Acts. To the extent that other witness testimony contradicts Coleman's allegations, the credibility of the witnesses is called into question. Summary judgment is not the place for a determination of credibility. See Turner v. Baylor Richardson Medical Center, 476 F.3d 337 (5th Cir. 2007) ("When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."). Therefore, there is a genuine factual dispute as to whether Cone was in a position to even observe the Acts.

Defendants argue next that even if Cone was in a position to observe the Acts as they occurred, there was no reasonable opportunity to intervene, as the Acts occurred too swiftly. However, Coleman and his mother, Ruthie Coleman, stated in competent summary judgment evidence that the Acts occurred for over a minute. See Record Document 81-2 at 3 & 81-5 at 14. Additionally, Shaver stated in his deposition that he looked in the other direction for "around a minute," and that when he turned back around Coleman was already handcuffed. Record Document at 11 & 19. Whether accurate in fact or not, one minute is more than enough time to intervene if a fellow officer is engaged in the use of excessive force. Therefore, there is sufficient evidence to produce a genuine dispute of material fact as to whether there was a reasonable opportunity for Cone to intervene in any excessive force that may have occurred. There is a dispute as to whether Cone was or was not in a position to even observe the Acts.

Finally, Defendants argue that the case should be dismissed based on the second prong of the qualified immunity analysis. As stated above, the second prong of the analysis requires the defendant's actions to be "objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." See Club Retro LLC v. Hilton, 568 F.3d 181, 194 (5th Cir. 2009) (quoted sources omitted). Defendants argue that the law establishing a bystander claim in excessive force cases was not clearly established at the time of the Acts in question. The Court disagrees.

For a right to be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier v. Katz, 533 U.S. at 202, 121 S.Ct. 2151. As the Fifth Circuit has held, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question

about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." Pasco ex rel. Pasco v. Knoblauch, 566 F.3d at 579–80 (internal quotations omitted). The proper inquiry is whether, under the law in effect at the time of the arrest, the officers could have reasonably believed that they were not required to intervene and prevent the alleged use of excessive force. See Deshotels v. Marshall, 454 Fed.Appx. 262 (2011).

Liability of an officer for failing to intervene in the use of excessive force by another law enforcement officer has been found by this Court as far back as 1984. See Smith v. Dooley, 591 F.Supp. 1157 ( W.D.La.1984), aff'd, 778 F.2d. 788 (5th Cir. 1985) (officers held liable where they were present at scene of excessive force and made no effort to intervene). More importantly, Fifth Circuit case law from 1995 clearly outlines a claim for an officer's failure to intervene in excessive force cases. See Hale v. Townley, 45 F.3d 914 (5th Cir. 1995). The facts in Hale are similar to the facts of the present case. In Hale, the plaintiff produced evidence that he was beaten by a police officer while the bystander officer stood by and watched it occur. Id. Additionally, the existence of the bystander claim in excessive force cases was reinforced by the Fifth Circuit in 2013. See Whitley v. Hanna, 726 F.3d 631, 646 (5th Cir. 2013). The Acts in question in this matter occurred on January 27, 2015. Therefore, the law surrounding this particular matter was well-established at all times relevant to this matter, and the Defendants could not have reasonably believed that they were not required to intervene in the SPD officers' alleged use of excessive force.

Accordingly, Coleman has presented evidence sufficient to raise a genuine dispute as to whether Cone observed the alleged excessive force and whether Defendants had sufficient time to intervene in the alleged excessive force. Whether or not excessive force

was or was not used in arresting Coleman remains a genuine dispute of fact and law. Additionally, the law surrounding bystander claims in excessive force cases was well established on January 27, 2015. Therefore, Cone is not entitled to dismissal at this stage based on qualified immunity. Cone's Motion for Summary Judgment as to this claim is **DENIED.**

### B. Defendant Shaver

In the present matter, Defendants argue that there is no genuine dispute as to whether Shaver observed the Acts in question. As such, they argue that summary judgment should be granted in Shaver's favor. It is undisputed that Shaver was in the immediate vicinity of the Acts. See Record Document 79-6 at 15. However, Shaver denies seeing anything after the beginning of Coleman's takedown, because he was "looking in the other direction." Id. at 11. If this were the only relevant evidence, the Court might agree that there is no genuine dispute as to this material fact. However, when Coleman's mother, Ruthie Coleman, was asked about the behavior of those present at the scene as the Acts occurred, she stated, "They were just looking, you know." Record Document 81-5 at 13. Given this testimony, although not particularly specific or detailed, along with the undisputed fact that Shaver was standing in the immediate vicinity of the Acts, the Court finds that there is a genuine dispute as to whether Shaver observed the Acts in question. As such, summary judgment is inappropriate on this ground.

Defendants then raise the same second and third arguments that they did for Cone: that there is no genuine dispute as to whether there was a reasonable opportunity to intervene and that Defendants' behavior was not objectively unreasonable in light of

was or was not used in arresting Coleman remains a genuine dispute of fact and law. Additionally, the law surrounding bystander claims in excessive force cases was well established on January 27, 2015. Therefore, Cone is not entitled to dismissal at this stage based on qualified immunity. Cone's Motion for Summary Judgment as to this claim is **DENIED.**

### B. Defendant Shaver

In the present matter, Defendants argue that there is no genuine dispute as to whether Shaver observed the Acts in question. As such, they argue that summary judgment should be granted in Shaver's favor. It is undisputed that Shaver was in the immediate vicinity of the Acts. See Record Document 79-6 at 15. However, Shaver denies seeing anything after the beginning of Coleman's takedown, because he was "looking in the other direction." Id. at 11. If this were the only relevant evidence, the Court might agree that there is no genuine dispute as to this material fact. However, when Coleman's mother, Ruthie Coleman, was asked about the behavior of those present at the scene as the Acts occurred, she stated, "They were just looking, you know." Record Document 81-5 at 13. Given this testimony, although not particularly specific or detailed, along with the undisputed fact that Shaver was standing in the immediate vicinity of the Acts, the Court finds that there is a genuine dispute as to whether Shaver observed the Acts in question. As such, summary judgment is inappropriate on this ground.

Defendants then raise the same second and third arguments that they did for Cone: that there is no genuine dispute as to whether there was a reasonable opportunity to intervene and that Defendants' behavior was not objectively unreasonable in light of

well-established law at the time. However, the analyses and conclusions as to Cone apply with equal weight as to Shaver.

Accordingly, Coleman has presented evidence sufficient to raise a genuine dispute as to whether Shaver observed the alleged excessive force and whether Shaver had sufficient time to intervene in the alleged use of excessive force. Additionally, the law surrounding bystander claims in excessive force cases was well established on January 27, 2015, the date of Coleman's arrest. Therefore, Shaver is not entitled to dismissal based on qualified immunity at this stage of the proceedings. Therefore, Defendants' Motion for Summary Judgment is **DENIED** as to this claim**.**

## CONCLUSION

Defendants' Motion for Summary Judgment (Record Document 79) is hereby **DENIED,** as there are genuine disputes as to material facts preventing the application of the qualified immunity defense. An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, on this the 28th day of September, 2018.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT